IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTONIO MATOS, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 23-5038-KSM |
| UBER TECHNOLOGIES, INC. , et al., | |
| Defendants. | |

MEMORANDUM

Marston, J.                                                                                                                   June 28, 2024

      Plaintiff Antonio Matos has sued Uber Technologies, its subsidiaries Raiser LLC and Raiser-PA LLC ("Defendants")[1], and his former Uber driver, Darryl Holloway, Jr., in connection with a physical assault he endured at the hands of Holloway. (Doc. No. 3.) Before the Court is both Plaintiff's motion to remand this matter back to the Court of Common Pleas of Philadelphia County (Doc. No. 7) and Defendants' motion to dismiss the Complaint in its entirety (Doc. No. 5). For the reasons set forth below, the Court will deny Plaintiff's motion to remand and grant Defendants' motion to dismiss.

I.     Background

    A.     Factual Background

      On July 8, 2022, at approximately 2:00 p.m., Plaintiff Antonio Matos's flight arrived at the Philadelphia International Airport. (Doc. No. 3 at ¶¶ 11–12.) Upon arrival, Plaintiff ordered a ride through the Uber application on his cellphone, requesting a pickup outside of Terminal B.

---

[1] While Darryl Holloway Jr. is a defendant is this matter, he has failed to enter an appearance and has not joined in the motion to dismiss currently before the Court. He is excluded from the Court's definition of "Defendants" for purposes of this opinion and will be addressed by name when relevant.

(*Id.* at ¶ 13.)  Plaintiff received notification through the application that he was paired with a driver, specifically Darryl Holloway Jr., who was on his way to Terminal B.  (*Id.* at ¶ 17.)  Shortly thereafter, Holloway messaged Plaintiff asking for his location because he could not find him.  (*Id.* at ¶ 18.)  When Plaintiff responded by asking if he could cancel the ride, Holloway told him not to.  (*Id.*)  After some additional searching, Holloway was still unable to find Plaintiff at Terminal B rideshare pickup and called Plaintiff again to ask for his location.  (*Id.* at ¶¶ 19–20.)  Plaintiff identified his location and again asked Holloway if he could cancel the ride.  (*Id.* at ¶ 20.)  Holloway again asked him not to.  (*Id.*)

At approximately 2:30 p.m., roughly thirty minutes after the ride was requested, Holloway arrived at Plaintiff's location.  (*Id.* at ¶ 21.)  Once there, Holloway exited his vehicle and said to Plaintiff, "Do you have something else to f***ing say to me?"  (*Id.* at ¶ 22.)  When Plaintiff didn't respond, Holloway said "I thought so you p***y ass f****t."  (*Id.* at ¶ 23.)  Holloway then began to attack Plaintiff, punching him in the face and head multiple times and shoving him out of the way.  (*Id.* at ¶¶ 24–29.)  Holloway then entered his vehicle and drove away from the scene before police arrived.  (*Id.* at ¶ 29.)  Plaintiff alleges that he endured both physical and emotional injuries as a result of Holloway's attack.  (*Id.* at ¶¶ 39, 43.)

      **B.**    **Procedural History**

On February 22, 2023, Plaintiff brought suit in the Court of Common Pleas of Philadelphia County against Uber Technologies, Inc., Raiser LLC, and Raiser-PA LLC.  *See Matos v. Uber Technologies, Inc.*, No. 230202343 (Ct. Comm. Pl. Phila.)  He also named John Doe #1 as a defendant, using a pseudonym because, at the time, he did not know the identity of his driver.[2]  *Id.*  Plaintiff asserted claims for assault, battery, intentional infliction of emotional

---

[2] The Court fails to understand how Plaintiff did not know at least the first name of his driver, given that some identifying information of the driver is provided to the rider through the app when the ride is

distress, and negligent hiring, supervision, and training against all Defendants.  (*Id.*)  Defendants then removed the matter to this court on March 28, 2023, and the case was assigned to the undersigned.  *See Matos v. Uber Technologies, Inc.*, 2:23-cv-1201-KSM (E.D. Pa.).  Following removal, Defendants provided Plaintiff with their initial disclosures, which identified his driver as Darryl A. Holloway, Jr. and stated that the address they had on file for him was 6200 N. Smedley Street Philadelphia, Pennsylvania.  (Doc. No. 7-1.)  Rather than filing a motion to remand because Plaintiff and Holloway were citizens of the same state, Plaintiff opted to voluntarily dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on April 12, 2023.  Doc. No. 5, *Matos v. Uber Technologies, Inc.*, 2:23-cv-1201-KSM (E.D. Pa.).

On November 3, 2023, Plaintiff filed the instant action in the Court of Common Pleas of Philadelphia County, listing Uber Technologies, Inc., Raiser LLC, Raiser-PA LLC, and Darryl Holloway, Jr. as defendants.  (Doc. No. 3.)  He again asserts claims for assault, battery, intentional infliction of emotional distress, and negligent hiring, supervision, and training against all Defendants.  (*Id.*)  When Plaintiff attempted to serve Holloway with this complaint at the address provided by Defendants in their initial disclosures in the previous case, he was told by the current occupant that Holloway has not lived there since at least July 2023.  (Doc. No. 7 at 3.)  Plaintiff subsequently discovered that Holloway lives in Williamstown, New Jersey, and properly served him at his new address.  (*Id.*)  On December 19, 2023, Defendants again removed the matter to this Court, asserting that this Court has diversity jurisdiction.  (Doc. No. 1.)  Defendants have now moved to dismiss the Complaint (Doc. No. 5) and Plaintiff has moved

---

confirmed.  When asked at oral argument, Plaintiff's counsel was similarly confused but confirmed that his client did not have that information.  (June 10, 2024 Hr'g Draft Tr. at 4:13–5:3.)

to remand this action back to state court (Doc. No. 7).  Holloway has not entered an appearance in this matter.

On June 10, 2024, the Court held oral argument on the parties' motions.  At the end of argument, Plaintiff informed the Court that he would be withdrawing Counts I, II, and III against Defendants,[3] which consist of his claims for assault, battery, and intentional infliction of emotional distress.  (June 10, 2024 Hr'g Draft Tr. at 26:10–27:11.)  Plaintiff indicated that he wishes to proceed only with Count IV, which asserts claims for negligent hiring, training, and supervision.  (*Id.*)

**II.     Motion to Remand**

The Court begins with Plaintiff's motion to remand this matter back to the Court of Common Pleas of Philadelphia County.  In short, Plaintiff argues that because he and Holloway are both citizens of Pennsylvania, there is no diversity jurisdiction under 28 U.S.C. § 1332(a), and since there is no other basis for federal jurisdiction, this case must be remanded back to state court.  (Doc. No. 7 at 16.)    However, for the reasons set forth below, the Court finds that Holloway is a citizen of New Jersey, not Pennsylvania, and thus this Court has diversity jurisdiction over this matter.

Under 28 U.S.C. § 1441, a defendant may remove a civil action brought in state court if the case could have originally been brought in federal court.  28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending.").  As is relevant for purposes of the instant motion, a district court has original jurisdiction over a civil action

---

[3] The Court understands Plaintiff to still be proceeding with these claims against Holloway.

4

between citizens of different states where "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). "Jurisdiction under § 1332(a) requires 'complete diversity,' meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (internal citations omitted). In a removal action such as this, there must be complete diversity of citizenship both when the case commenced (i.e., when the case was filed in state court) and when the matter was removed to federal court. *See In re Lipitor Antitrust Litig.*, 855 F.3d 126, 150–51 (3d Cir. 2017), as amended (Apr. 19, 2017) ("Since this case was removed to federal court, diversity must have existed both at the time the . . . plaintiffs' state court complaint was filed and at the time of removal."). "[N]o changes in citizenship after the time of filing (and, as relevant here, the time of removal) can create or destroy diversity." *Id.* at 151 (internal citations omitted).

In the context of a natural person, "[c]itizenship is synonymous with domicile." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006); *L. Offs. of Conrad J. Benedetto v. Admiral Ins. Co.*, No. CV 20-4474, 2020 WL 6083468, at *1 (E.D. Pa. Oct. 15, 2020) ("A natural person is deemed to be a citizen of the state where he is domiciled."). An individual's domicile, in turn, "is his true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *McCann*, 458 F.3d at 286. In other words, an individual's domicile is "the center of one's business, domestic, social and civic life." *Freidrich v. Davis*, 989 F. Supp. 2d 440, 444 (E.D. Pa. 2013) (quoting *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011)). Domicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "When the objective and subjective concur, one's domicile is immediately established." *Id.*; *see also*

5

*McCann*, 458 F.3d at 286 (stating that "[a]n individual can change domicile instantly" so long as they take up "residence at the new domicile" and "intend to remain there" (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972)). In determining an individual's domicile, and in particular, whether the individual has the subjective intention to remain in a given state, the Court considers several factors, including "declarations, exercise of political rights, payment of personal taxes, house of residence, and place of business." *McCann*, 458 F.3d at 286. The Court can also consider the "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *Id.* (citing 13B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3612 (3d ed. 2005)). Once a domicile is acquired, it is "presumed to continue until it is shown to have been changed." *Id.* (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)).

"[T]he burden is on the removing party to establish federal jurisdiction." *Johnson*, 724 F.3d at 346 (internal citation omitted). Moreover, where a party is asserting a change in domicile, they must make such a showing by a preponderance of the evidence. *McCann*, 458 F.3d at 289. In reviewing this motion to remand, the Court is mindful that "[t]he removal statute should be strictly construed and all doubts resolved in favor of remand." *Johnson*, 724 F.3d at 346 (quoting *Brown v. Francis*, 75 F.3d 860, 864–65 (3d Cir. 1996)).

As discussed above, whether the Court has jurisdiction over this matter, and thus whether removal was proper, hinges on the citizenship of Holloway. Plaintiff asserts that Holloway is a domiciliary and citizen of Pennsylvania, thus destroying complete diversity. (Doc. No. 7 at 16.) He argues that the proper time frame in which to analyze residency is when he filed his first complaint in state court on February 22, 2023, at which time he claims Holloway was a

6

domiciliary of Pennsylvania.  (*Id.* at 14.)[4]  In the alternative, he argues that even if the Court were to review residency at the date of his operative November 3, 2023 Complaint, Defendants have not carried their burden of proving that Holloway's domicile has changed from Pennsylvania to New Jersey because they rely solely on the fact that he was served in New Jersey.  (*Id.* at 16–17.)  Defendants, on the other hand, assert that Holloway is and has been a domiciliary of New Jersey since 2021 and thus complete diversity exists.  (Doc. No. 9 at 5–9.)

The Court first addresses Plaintiff's argument regarding the timeframe in which the Court must analyze the parties' citizenship for purposes of diversity jurisdiction.  Plaintiff has not provided nor is the Court aware of any authority supporting Plaintiff's position that the Court must use the date of his previously filed, voluntarily dismissed complaint for purposes of determining citizenship.  To the contrary, a panoply of cases have held that the voluntary dismissal of an action "leaves the situation as if the action never had been filed."  9 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2367 (4th ed. 2023) (collecting cases); *Dorfsman v. L. Sch. Admission Council, Inc.*, No. CIV.A. 00-0306, 2001 WL 1754726, at *1 (E.D. Pa. Nov. 28, 2001) (holding the same); *Robinson v. Willow Glen Acad.*, 895 F.2d 1168, 1169 (7th Cir. 1990) ("[W]hen, as here, a case is voluntarily dismissed . . . the action is treated as if it had never been filed."); *cf. Gen. Cas. v. United States Gov't*, No. 13-CV-5596, 2014 WL 2198487, at *3 (N.D. Ill. May 27, 2014) (holding that the statute of limitations is reset when a case is voluntarily dismissed because a suit that is voluntarily dismissed is treated as "if it had never been filed").  Applied here, the Court must disregard Plaintiff's prior complaint and treat this matter as if it were originally filed on November 3, 2023.  It therefore follows that the proper dates to analyze whether there is complete diversity of

---

[4] Because Plaintiff did not add page numbers to his filing, the Court relies on the pagination assigned by the ECF system.

citizenship in this matter are November 3, 2023, when Plaintiff filed the instant action in state court, and December 19, 2023, when Defendants removed this case to federal court. *See Thompson v. Greyhound Lines, Inc.*, 574 F. App'x 407, 408–09 (5th Cir. 2014) (finding the plaintiff's previous voluntarily dismissed suit had "no bearing on diversity jurisdiction" because "[t]he rule in the federal courts is that the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) is to render the proceedings a nullity and leave the parties as if the action had never been brought"). Only if diversity existed at both points in time was removal proper.[5]

With the time frame clarified, the Court finds that Defendants have shown by a preponderance of the evidence that Holloway has changed his domicile from Pennsylvania to New Jersey. Contrary to Plaintiff's assertion that Defendants rely only on the fact that Holloway was served in New Jersey (Doc. No. 7 at 16), Defendants have marshaled substantial evidence demonstrating that Holloway's "fixed and permanent home" is in fact New Jersey. For example, Defendants have shown that Holloway purchased a home in New Jersey on August 31, 2021 and that he and his wife have resided at that property since then. (Doc. No. 9-1 at 80–97.) They have also shown that Holloway maintains a New Jersey license, which was issued to him on July 24, 2023, four months before this lawsuit was filed in state court. (*Id.* at 102.) And finally, they

---

[5] Plaintiff also argues that the Court should use this earlier date because Defendants have unclean hands in this matter. (Doc. No. 7 at 4.) He asserts that Defendants waited 30 days to provide the name and residency of their driver, which showed he lived in Pennsylvania, in an attempt to remain in Federal Court. (*Id.*) The Court finds this argument irrelevant and meritless. Defendants waiting 30 days to provide the name of their driver and the address they had associated with this driver in no way impacted Plaintiff's ability to remand his original action back to state court for lack of subject matter jurisdiction. Instead, the statute explicitly provides that a motion to remand on the basis of subject matter jurisdiction may be made at any point. 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect *other than lack of subject matter jurisdiction* must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.*" (emphasis added)). Therefore, Plaintiff's remedy when faced with this purportedly late disclosure of Holloway's name and address was to file a motion to remand in his original action, not to dismiss that action and then in this new case, assert that the Court must use his original filing date in determining whether diversity jurisdiction exists.

have provided evidence that Holloway's vehicle has been insured and registered in New Jersey since months before this suit was brought.[6] (*Id.* at 104, 106.) Taken together, this evidence suggests that, at the relevant times, New Jersey was the "center" of Holloway's "business, domestic, social and civic life."[7] *Freidrich*, 989 F. Supp. 2d at 444 (finding the defendant was a citizen of Germany where he owned a home and business there and had a German driver's license and residency permit).

The Court thus finds that Holloway is a citizen of New Jersey for purposes of diversity jurisdiction. And because Plaintiff is a citizen of Pennsylvania, complete diversity exists between the parties and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).[8] Plaintiff's motion to remand is therefore denied.

### III.    Motion to Dismiss

The Court turns next to Defendants' motion to dismiss. As discussed above, at oral argument Plaintiff dropped his claims for assault, battery, and intentional infliction of emotional

---

[6] Defendants provide additional evidence of Holloway's connections to New Jersey, including that he maintains bank accounts in New Jersey, that he pays taxes in New Jersey, and that he has declared an intent to stay in New Jersey indefinitely. (Doc. No. 9-1 at 80.) However, there are no dates associated with these events and thus the Court cannot decipher whether these accounts were opened, these taxes were paid, or this intent to remain was formed after the lawsuit was filed, in which case they would provide no insight as to whether Holloway is a citizen of New Jersey for purposes of diversity jurisdiction. The Court therefore does not rely on this evidence in determining whether Holloway has changed domiciles.

[7] This information was not included in the notice of removal and appeared for the first time in Defendants' opposition to the motion for remand. However, the Court can still consider this evidence in determining whether the Court has subject matter jurisdiction over this case. *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits."); *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011) ("[I]n determining whether the jurisdictional requirement has been met . . . the court may consider evidence submitted subsequent to the notice of removal, including evidence submitted in conjunction with an opposition to a motion to remand.").

[8] The parties appear to agree that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a).

distress (Counts I, II, and III) against Defendants.[9]  (June 10, 2024 Hr'g Draft Tr. at 26:10–27:11.)  That leaves only Plaintiff's claims for negligent hiring, supervision, and training (Count IV).  After providing the standard by which the Court must review Defendants' motion, the Court addresses each of these claims in turn.

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement.'" *Id.*  Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that

---

[9] The Court notes that even if Plaintiff had not dropped these claims, they were not viable and would have been dismissed with prejudice.  With respect to these claims, Plaintiff relies on the theory of respondeat superior to hold Defendants liable for the acts of Holloway.  (Doc. No. 3 at ¶¶ 3, 9, 32, 37, 47, 52, 55, 61, 64, 67.)  Under Pennsylvania law, an employer can only be held vicariously liable for the tortious acts of their employee "done in the course of his employment, and within the general scope of his authority." *Lunn v. Boyd*, 403 Pa. 231, 235 (1961) (internal quotation marks omitted).  "An act is within the scope of employment if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs within the employee's authorized time and space limits; (3) it is actuated at least in part by a purpose to serve the employer; and (4) if force is used, its use is not unexpected by the employer." *Fusco v. Uber Techs., Inc.*, No. CV 17-00036, 2018 WL 3618232, at *9 (E.D. Pa. July 27, 2018) (internal citations omitted).  Here, Plaintiff has not pled facts sufficient to show that the assault was an act of a kind and nature that Holloway was employed to perform, that the assault was actuated to serve Defendants, or that the force Holloway used was expected by Defendants.  Moreover, even if the above factors were met, respondeat superior liability would not attach because the manner in which Holloway conducted himself was "so excessive and dangerous, as to be totally without responsibility or reason under the circumstances." *Lunn*, 403 Pa. at 104; *Fusco*, 2018 WL 3618232, at *10 (finding that the defendant Uber driver pulling the plaintiff out of the car and severely beating him was so "outrageous" and brutal as to fall outside of the scope of employment); *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 779, 781–82 (Pa. Super. Ct. 2014) (finding that even though there was "no doubt that part of [the driver's] employment [was] collecting money from customers," the driver's kicking and punching of a passenger who attempted to flee without paying his fee was so excessive as to place his conduct outside the scope of employment as a matter of law).  Indeed, Plaintiff himself acknowledges how excessive the attack was, describing it as "exceptionally brutal" and entirely disproportionate to Plaintiff's actions.  (Doc. No. 6 at 14.)

10

actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").  It is Defendants' burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

### B.  Negligent Hiring, Supervision, and Training

As discussed, Plaintiff's only remaining claims are for Defendants' purportedly negligent hiring, supervision, and training of Holloway.  In support of these claims, Plaintiff alleges that Defendants maintained inadequate screening procedures and background checks, failed to prevent Holloway's attack, lacked adequate security and monitoring to protect Plaintiff, and failed to train its employees "in the best way to resolve conflicts without resulting to punching, and threatening people."  (Doc. No. 3 at ¶ 70.)  While the analysis for these claims overlaps, the Court addresses each in turn below and finds that none are viable as currently pled.[10]

---

[10] Plaintiff asserts numerous times in his Complaint and argues in his briefing that Defendants are common carriers and thus owed Plaintiff the highest duty of care. (*See* Doc. No. 3 at ¶¶ 14, 16, 69; Doc. No. 6 at 5–7); *see also Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966) ("A common carrier for hire, although not an insurer, owes to its passengers the highest degree of care.").  Because Plaintiff's claims are deficient regardless of whether Defendants are held to a higher duty of care, the Court need not reach this issue.  However, the Court notes that in Act 164 of 2016, the Pennsylvania legislature modified the Commonwealth's General Local Government Code, Public Utility Code, and Vehicle Code to account for "transportation network companies" such as Defendants.  As is relevant for our purposes, this Act

First, to state a claim for negligent hiring, a plaintiff must show that the employer knew or should have known of the violent propensities of the employee and hired them anyway, thus exposing the plaintiff to danger. *Brezenski*, 755 A.2d at 39–40; *Fusco*, 2018 WL 3618232, at *4 ("[T]he plaintiff must show that the employee's prior bad acts would have put a reasonable employer on notice of the employee's propensity to injure others."). To make such a showing a plaintiff must allege "a specific instance of past misconduct" on the part of the employee. *Fusco*, 2018 WL 3618232, at *5 ("[F]ederal courts routinely dismiss negligent hiring claims under Rule 12(b)(6) if the plaintiff fails to allege a specific instance of past misconduct."). Here, the Complaint is completely devoid of any factual allegations suggesting that Holloway had committed similar bad acts prior to joining Uber or that Defendants otherwise knew or should have known that Holloway had violent tendencies before enrolling him as a driver. At most Plaintiff asserts in conclusory fashion that Defendants' screening process was insufficient. (Doc. No. 3 at ¶ 70.) But this allegation does not support a claim for negligent hiring because Plaintiff has failed to assert that more thorough screening would have uncovered some past misconduct on the part of Holloway. *See Fusco*, 2018 WL 3618232, at *5 ("Although Plaintiff alleges that a reasonable employer in Defendant's position would have conducted additional screening before hiring the driver, this allegation does not state a claim for negligent hiring unless it is further alleged that a more thorough screening process would have uncovered signs of violent behavior."). Since Plaintiff has made no specific factual allegations suggesting that Defendants

---

added the following provision to the Public Utility Code: "Except as otherwise provided under this chapter, the following laws and regulations of this Commonwealth may not apply to a transportation network company or transportation network company driver . . . Laws and regulations imposing a greater standard of care on motor carriers than that imposed on other drivers or owners of motor vehicles." 66 Pa. Cons. Stat. § 2603(b)(4). Thus, while the Court does not decide this issue, it appears the Pennsylvania legislature has explicitly provided that companies like Defendants should not be held to the heightened standard of care applicable to common carriers.

knew or should have known that Holloway posed a danger to Plaintiff, he has failed to state a claim for negligent hiring.[11] *See id.* (dismissing negligent hiring claim where the complaint did "not allege any instances of past misconduct by the driver, and only generally allege[d] that the driver was unqualified and dangerous"); *G.B. v. Jade Nails Hair Spa*, No. 5:19-CV-06093-JMG, 2021 WL 4149146, at *4 (E.D. Pa. Sept. 13, 2021) ("G.B.'s negligent hiring claim falls short because she has not established that Nhin committed any bad acts prior to his hiring at Jade Nails."); *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 667 (E.D. Pa. 2020) (dismissing negligent hiring claim where the plaintiff alleged only that the driver had "inappropriate or dangerous characteristics"); *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 362 (S.D.N.Y. 2021) (dismissing claim where the plaintiff did not allege "any instances of past misconduct by [the driver] or any other facts with respect to him that should have led Uber to concern").

For a similar reason, Plaintiff's negligent supervision claim fails. "To make out a claim for negligent supervision, the plaintiff must show that the employer knew or should have known of a need to supervise the employee, and that, by failing to do so, exposed the plaintiff to the employee's misbehavior." *Fusco*, 2018 WL 3618232, at *4; *see also R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000). As with the negligent hiring claim, Plaintiff must point to some prior bad acts on the part of Holloway that "would have put a reasonable employer on notice of the employee's propensity to injure others." *Fusco*, 2018 WL 3618232, at *4 (citing *Heller v. Patwil Homes*, 713 A.2d 105, 108 (Pa. Super. Ct. 1998)). Here, there is no allegation in the Complaint that Holloway committed any sort of misconduct before he assaulted Plaintiff nor does the Complaint contain any other facts suggesting Defendants

---

[11] Plaintiff argues that the Court should infer that Holloway has engaged in similar acts based on how brutal and unprompted his attack of Plaintiff was. (Doc. No. 6 at 14.) That inference is far too attenuated for the Court to reach, even when viewing the Complaint in Plaintiff's favor.

knew or should have known of a need to supervise him.  Plaintiff has therefore failed to state a claim for negligent supervision.[12]  *See, e.g.*, *Young v. Temple Univ. Campus Safety Servs.*, No. CV 15-2892, 2015 WL 6503386, at *4 (E.D. Pa. Oct. 28, 2015) (dismissing negligent supervision claim where the complaint failed to "allege any facts that would establish that Temple University knew or should have known that Officer Jones had 'a propensity to engage in conduct for which [it] could be held liable.'"); *Scruggs v. Whiting-Turner Contracting Co.*, No. 17-CV-3202, 2018 WL 3831408, at *4 (E.D. Pa. Aug. 10, 2018) (dismissing negligent supervision claim because there was "no allegation that [the employee] had committed prior bad acts and that [the defendant] knew or should have known of those acts").

And finally, the Court finds that Plaintiff has not stated a claim for negligent training. "Pennsylvania courts have not outlined a specific framework for analyzing a negligent training claim, separate from the general negligence framework of duty, breach, causation, damages." *Burns*, 675 F. Supp. 3d at 547 (internal quotation marks omitted).  Thus, a negligent training claim is best understood to require a plaintiff to show that the defendant (1) had a duty to train their employees on the particular topic at issue; (2) breached that duty; and (3) the breach of that duty caused the plaintiff's harm.  *Oldham v. Pa. State Univ.*, No. 4:20-CV-02364, 2022 WL 1528305, at *24 (M.D. Pa. May 13, 2022).  In support of his claim, Plaintiff asserts only that

---

[12] The Court also notes that Plaintiff's claim for negligent supervision, which requires that an agent be acting *outside* of the scope of their employment, is inconsistent with Plaintiff's repeated allegations that Holloway was acting *within* the scope of his employment when he assaulted Plaintiff. (*See, e.g.*, Doc. No. 3 at ¶¶ 3, 9, 32, 37, 47, 52, 55, 61, 64, 67); *see Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013) ("To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting *outside the scope of his employment*, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." (emphasis added)); *Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 549 (E.D. Pa. 2023) (dismissing negligent supervision claim where it was alleged that the employees were acting within the scope of their employment).

Defendants failed to train their employees "in the best way to resolve conflicts without resulting to punching, and threatening people." (Doc. No. 3 at ¶ 70.) Completely missing from the Complaint are facts suggesting that Defendants had a duty to train Holloway on an issue as elementary as not assaulting passengers or that training on something this basic would have prevented the assault. Plaintiff has also failed to set forth any facts regarding what kind of training Defendants do provide, what policies and procedures Defendants have in place, and why those policies and procedures are insufficient. *See Oldham*, 2022 WL 1528305, at *25 ("Oldham provides no information on what trainings occurred, who did (or did not) receive them, and why they were purportedly deficient. Absent some specific facts showing how Penn State, Harris, and Glon breached their duty to properly train their employees and/or staff, Oldham cannot sustain a claim for negligent training."). The Court thus finds that Plaintiff has failed to state a claim for negligent training.

* * *

In sum, because the Complaint does not contain any allegations of prior bad acts on the part of Holloway and does not allege facts suggesting that Defendants had a duty to train their employees not to assault passengers, Plaintiff's negligent hiring, supervision, and training claims fail.[13] However, because these claims could be bolstered with additional factual assertions, the Court will dismiss them without prejudice and provide Plaintiff leave to amend.

---

[13] At oral argument, Plaintiff strenuously argued that he cannot be expected to reference specific instances of bad behavior on the part of Holloway without the benefit of discovery. (*See, e.g.*, June 10, 2024 Hr'g Draft Tr. at 17:11–19:1; 19:21–20:10.) But the Court cannot permit Plaintiff's claims to proceed based solely on his unsupported belief that discovery *may* reveal the facts necessary for him to state a plausible cause of action. *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (rejecting plaintiffs' argument that "because discovery may reveal [the defendants] engaged in 'fraud or concealment' dismissal of the complaint was premature" and noting that "were we to reverse the dismissal here to allow for discovery, we would be permitting appellants to conduct a fishing expedition in order to find a cause of action. We cannot do so."); *Castillo v. Maguire*, No. 3:13-CV-2953, 2016 WL 11909355, at *1 (M.D. Pa. Sept. 20, 2016) ("[A]lthough Plaintiff asserts 'that evidence may be later

## IV.     Conclusion

For the reasons set forth above, Plaintiff's motion to remand is denied and Defendants' motion to dismiss is granted in its entirety.  The Court will allow Plaintiff leave to file an amended complaint in the event he can do so consistent with the analysis set forth in this Memorandum.  An appropriate Order follows.

---

obtained that would better support the claim,' discovery should not be permitted in order for the Plaintiff to discover facts that would assist him in pleading a plausible cause of action."); *Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, No. 16-cv-0125, 2016 WL 1535084, at *1 n.3 (W.D. Pa. Apr. 15, 2016) ("[P]laintiffs are burdened with setting forth sufficient facts in their complaints to set forth plausible claims. The doors to discovery are not opened upon the filing of a complaint to allow plaintiff to engage in a fishing expedition to discover facts to defend against a motion to dismiss."). And contrary to Plaintiff's argument, as the Honorable Mitchell S. Goldberg noted in *Fusco*, "federal courts routinely dismiss negligent hiring claims under Rule 12(b)(6) if the plaintiff fails to allege a specific instance of past misconduct." 2018 WL 3618232, at *5 (collecting cases); *Hoffman v. Silverio-Delrosar*, No. 20-CV-13291, 2021 WL 2434064, at *4 (D.N.J. June 15, 2021) (dismissing negligent hiring, supervision, and training claims and rejecting the plaintiff's argument "that because discovery has not occurred in this matter, he cannot determine whether Silverio-Delrosar was properly trained or had a history of previous incidents with other Uber customers"); *see also Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 230 (D.D.C. 2015) (noting that Rule 12 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" and providing that although the plaintiff may contend he needs discovery to support his negligent hiring claim, the plaintiff must "put forth factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 477 (D. Mass. 2020) (dismissing negligent hiring claim where there were no allegations of past misconduct and noting that "[a]lthough the motion to dismiss standard is not onerous, a plaintiff must present more than such threadbare recitals of legal elements supported only by conclusory statements"). Since Plaintiff has failed to raise sufficient allegations to "nudge" his claims for negligent hiring, supervision, and training "across the line from conceivable to plausible," these claims must be dismissed. *Fusco*, 2018 WL 3618232, at *4 (quoting *Bell Atl. Corp.*, 550 U.S. at 568–70).