IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTONIO MATOS**, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO. 23-5038-KSM** |
| **UBER TECHNOLOGIES, INC.**, et al., | |
| Defendants. | |

## MEMORANDUM

**Marston, J.**                                                                                          February 3, 2025

Uber is not an insurer. So, when an Uber driver commits an assault, Uber is not automatically liable. Plaintiff Antonio Matos alleges that his Uber driver, Darryl Holloway, Jr., attacked him. (Doc. No. 18.) Based on this attack, Plaintiff brought negligent hiring, training, and supervision claims against Uber Technologies and its subsidiaries Raiser LLC and Raiser-PA LLC ("Defendants").[1] (*Id.*) Presently before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint. (Doc. No. 19.) The Court previously granted Defendants' motion to dismiss and gave Plaintiff a chance to plead prior bad acts by Holloway that would have put Defendants on notice of his propensity for violence. (Doc. Nos. 13–14.) The Court also gave Plaintiff a chance to bolster his negligent training claim. (*Id.*) Because Plaintiff has not cured these deficiencies, the Court will grant Defendants' motion to dismiss.

---

[1] Plaintiff also brings claims of assault, battery, and intentional infliction of emotional distress against Darryl Holloway, Jr. (Doc. No. 18 at 7–10.) Holloway has not entered an appearance in this case and has not joined the motion to dismiss currently before the Court. The Court thus excludes him from the term "Defendants" for purposes of this Memorandum. When relevant, he will be addressed by name.

I.    **Background**

    A.    **Factual Background**[2]

In the early afternoon of July 8, 2022, Plaintiff's flight arrived at the Philadelphia International Airport. (Doc. No. 18 at 3.) Upon arrival, Plaintiff ordered a ride through the Uber application on his phone and requested a pickup outside of Terminal B. (*Id.*) Uber notified Plaintiff that he was paired with a driver, Darryl Holloway Jr. (*Id.*) A short while later, Holloway messaged Plaintiff to ask for his location because he could not find him. (*Id.*) When Plaintiff responded by asking if he could cancel the ride, Holloway told him not to do so. (*Id.*) After some additional searching, Holloway still could not find Plaintiff and asked for Plaintiff's location again. (*Id.* at 4.) Plaintiff gave his location and asked for the second time if he could cancel the ride. (*Id.*) Holloway again told him not to do so. (*Id.*)

Holloway found Plaintiff roughly thirty minutes after the ride was requested. (*Id.*) Once there, he exited his car and said to Plaintiff, "Do you have something else to f***ing say to me?" (*Id.*) When Plaintiff did not respond, Holloway said, "I thought so you p***y ass f****t." (*Id.*) Holloway then began to attack Plaintiff, punching him in the head and shoving him. (*Id.*) After the attack, Holloway jumped in his car and drove away before police arrived. (*Id.*) Plaintiff alleges that he suffered physical and emotional injuries from this attack. (*Id.* at 5–6.)

    B.    **Procedural History**

On February 22, 2023, Plaintiff sued Uber Technologies, Inc., Raiser LLC, and Raiser-PA LLC in the Court of Common Pleas of Philadelphia County. *See Matos v. Uber Techs., Inc.*, No. 230202343 (Ct. Comm. Pl. Phila.) He also named John Doe #1 as a Defendant because he

---

[2] These allegations come from Plaintiff's second amended complaint. (Doc. No. 18.) The Court assumes their truth for purposes of this motion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

did not know the identity of his driver at that time. *Id.* Plaintiff asserted claims for assault; battery; intentional infliction of emotional distress; and negligent hiring, supervision, and training against all Defendants. (*Id.*) Defendants removed the matter to this Court on March 28, 2023. *See Matos v. Uber Techs., Inc.*, 2:23-cv-1201-KSM (E.D. Pa.). Following removal, Defendants provided Plaintiff with their initial disclosures, which identified his driver as Darryl Holloway, Jr. and stated that the address they had on file for him was 6200 N. Smedley Street Philadelphia, Pennsylvania. (Doc. No. 7-1.) Rather than filing a motion to remand because Plaintiff and Holloway were citizens of the same state, Plaintiff opted to voluntarily dismiss the case without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) on April 12, 2023. Doc. No. 5, *Matos v. Uber Technologies, Inc.*, 2:23-cv-1201-KSM (E.D. Pa.).

On November 3, 2023, Plaintiff filed the instant action in the Court of Common Pleas of Philadelphia County, listing Uber Technologies, Inc., Raiser LLC, Raiser-PA LLC, and Darryl Holloway, Jr. as Defendants. (Doc. No. 3.) He again asserted claims for assault; battery; intentional infliction of emotional distress; and negligent hiring, supervision, and training against all Defendants. (*Id.*) When Plaintiff attempted to serve Holloway with this complaint at the Philadelphia address, however, he was told by the current occupant that Holloway has not lived there since at least July 2023. (Doc. No. 7 at 3.) Plaintiff discovered that Holloway lives in Williamstown, New Jersey and properly served him at his new address. (*Id.*) On December 19, 2023, Defendants again removed the matter to this Court, asserting that this Court has diversity jurisdiction. (Doc. No. 1.) Defendants then moved to dismiss the complaint (Doc. No. 5), and Plaintiff moved to remand this action back to state court (Doc. No. 7).

On June 10, 2024, the Court held oral argument on both motions. At the end of argument, Plaintiff told the Court that he withdrew Counts I, II, and III against Defendants,

which consisted of his claims for assault, battery, and intentional infliction of emotional distress. (June 10, 2024 Hr'g Draft Tr. at 26:10–27:11.)  Plaintiff wished to proceed only with Count IV, which encompassed the claims for negligent hiring, training, and supervision.  (*Id.*)

Later that month, the Court granted Defendants' motion to dismiss and denied Plaintiff's motion to remand.  (Doc. No. 14.)  The Court dismissed with prejudice Plaintiff's claims for assault, battery, and intentional infliction of emotional distress against Defendants Raiser, LLC, Raiser-PA, LLC, and Uber Technologies, Inc. (*Id.*).  But the Court dismissed without prejudice Plaintiff's claims for negligent hiring, training, and supervision against those Defendants.  (*Id.*)

In the accompanying Memorandum, the Court explained that Plaintiff's complaint lacked "any factual allegations that Holloway had committed similar prior bad acts before joining Uber or that Defendants otherwise knew or should have known that Holloway had violent tendencies before enrolling him as a driver."  *Matos v. Uber Techs., Inc.*, No. CV 23-5038-KSM, 2024 WL 3238127, at *6 (E.D. Pa. June 28, 2024).  This deficiency doomed both his negligent hiring and negligent supervision claims.  As for his negligent training claim, the Court found that Plaintiff had failed to allege facts that suggested "Defendants had a duty to train Holloway on an issue as elementary as not assaulting passengers or that training on something this basic would have prevented the assault."  *Id.* at *7.  In sum, the Court dismissed the negligent hiring, training, and supervision claims because Plaintiff's complaint lacked allegations of "prior bad acts on the part of Holloway" and "facts suggesting that Defendants had a duty to train their employees not to assault passengers."  *Id.*

On July 29, 2024, Plaintiff filed an amended complaint that was nearly identical to his original one.  (Doc. No. 15.)  So, the Court held a telephone conference a week later to explain that his amended complaint needed to correct the deficiencies identified in the Court's

memorandum.  (Doc. No. 17.)  During the call, the Court granted Plaintiff leave to file a second amended complaint, and Plaintiff did so on August 12, 2024.  (Doc. No. 18.)

In his second amended complaint, Plaintiff rehashes many of the same factual allegations against Defendants.  Plaintiff also attached three new exhibits to his updated complaint.[3]  The first exhibit is a traffic court record from 2006 where Holloway pled guilty to several traffic violations.  (Doc. No. 18-1.)  The second exhibit is a Philadelphia County Court of Common Pleas civil docket, which shows that Holloway had several traffic court judgments from 2006 and one from 2011.  (Doc. No. 18-2.)  The third and final exhibit is a Philadelphia County Court of Common Pleas civil docket, which shows that Holloway was involved in motor vehicle lawsuits in 2001 and 2020.[4]  (Doc. No. 18-3.)  Both lawsuits settled.  (*Id.*)

II.   **Motion to Dismiss**

Defendants now move to dismiss Plaintiff's second amended complaint.  (Doc. No. 19.)  Plaintiff responded (Doc. No. 20), and the Court held oral argument on January 29, 2025 (Doc. No. 21).  For the reasons set forth below, the Court will grant Defendants' motion to dismiss and will dismiss Plaintiff's claims against Defendants with prejudice.

A.   **Standard of Review**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[3] Because the documents are "attached to the complaint," the Court may consider them. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011).

[4] It is unclear whether the 2001 case involved the same Daryl Holloway, Jr. because the docket lists an Arizona address for Holloway.  (Doc. No. 18-3 at 6.)

defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement.'" *Id.* (internal quotations omitted). Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotations omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

### B.     Respondeat Superior

Although it is far from clear, it appears that Plaintiff attempts to assert a respondeat superior claim against Defendants. Throughout his second amended complaint, Plaintiff makes repeated allegations that Holloway was acting within the scope of his employment when he assaulted Plaintiff. (*See, e.g.*, Doc. No. 18 at ¶¶ 3, 9, 33, 37, 47, 52, 55, 61, 64, 67.) In the heading of Count IV (his only claim against Defendants), Plaintiff includes the phrase "Respondeat Superior." (*Id.* at 10.) Also, in response to Defendants' motion to dismiss, Plaintiff

argues that his claims against Defendants are "legally sufficient under . . . the doctrine of respondeat superior." (Doc. No. 20 at 9.)

To start, the Court is puzzled by Plaintiff's mention of respondeat superior in this complaint. At the first oral argument, Plaintiff withdrew his claims for assault, battery, and intentional infliction of emotional distress (Counts I, II, and III) against Defendants. (June 10, 2024 Hr'g Draft Tr. at 26:10–27:11.) Because any amendment to these claims would be futile, the Court dismissed these claims with prejudice. *See Matos*, 2024 WL 3238127, at *4 n.9 (concluding that Plaintiff could not rely on the "on the theory of respondeat superior to hold Defendants liable for the acts of Holloway" under Pennsylvania law); (Doc. No. 14 at 1). Strangely, Plaintiff concedes that he "is not seeking to hold Defendants vicariously liable for the aforementioned intentional torts." (Doc. No. 20 at 11.) Instead, he tries to bring a free-standing respondeat superior claim against Defendants to hold them responsible for Holloway's acts. But under Pennsylvania law, "there is no independent cause of action for respondeat superior." *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 586 (E.D. Pa. 2012).

In any event, the Court still finds that Plaintiff cannot rely on the "theory of respondeat superior to hold Defendants liable for the acts of Holloway." *Matos*, 2024 WL 3238127, at *4 n.9. Under Pennsylvania law, an employer can be held vicariously liable only for the tortious acts of their employee "done in the course of his employment, and within the general scope of his authority." *Lunn v. Boyd*, 169 A.2d 103, 104 (Pa. 1961) (internal quotations omitted). "An act is within the scope of employment if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs within the employee's authorized time and space limits; (3) it is actuated at least in part by a purpose to serve the employer; and (4) if force is used, its use is

not unexpected by the employer." *Fusco v. Uber Techs., Inc.*, No. CV 17-00036, 2018 WL 3618232, at *9 (E.D. Pa. July 27, 2018) (internal citations omitted).

Plaintiff's second amended complaint lacks allegations that the assault was an act of a kind and nature that Holloway was employed to perform, that the assault was actuated to serve Defendants, or that the force Holloway used was expected by Defendants. Plus, even if the above factors were met, respondeat superior liability would not attach because the manner in which Holloway conducted himself was "so excessive and dangerous, as to be totally without responsibility or reason under the circumstances." *Lunn*, 168 A.2d at 104; *see also Fusco*, 2018 WL 3618232, at *10 (finding that an Uber driver's attack of a passenger was so "outrageous" and brutal as to fall outside of the scope of employment); *Spitsin v. WGM Transp., Inc.*, 97 A.3d 774, 779, 781–82 (Pa. Super. Ct. 2014) (finding that a driver kicking and punching a passenger who attempted to flee without paying was so excessive that his conduct fell outside the scope of his employment).

In sum, Plaintiff's respondeat superior claim does not exist under Pennsylvania law. And, to the extent he claims that Defendants are vicariously liable for Holloway's acts, those claims fail as a matter of law and are precluded by the Court's previous Order. Because any amendment would be futile, the Court dismisses this claim with prejudice. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) ("Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim.").

### C. Negligent Hiring, Supervision, and Training

In his second amended complaint, Plaintiff renews his claims against Defendants for negligent hiring, supervision, and training of Holloway.[5] (Doc. No. 18 at 10–15.) In a prior

---

[5] In response to Defendants' motion to dismiss, Plaintiff says he seeks to hold Defendants liable for negligent retention. (*See* Doc. No. 20 at 11.) Because he has not pleaded this claim in his initial

Memorandum, the Court dismissed these claims without prejudice because Plaintiff's original complaint lacked allegations of "prior bad acts on the part of Holloway" and "facts suggesting that Defendants had a duty to train their employees not to assault passengers." *Matos*, 2024 WL 3238127, at *7. As explained below, Plaintiff's updated complaint does not cure these deficiencies.[6]

First, to state a claim for negligent hiring, a plaintiff must show that the employer knew or should have known of the violent propensities of the employee and hired them anyway, thus exposing the plaintiff to danger. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39–40 (Pa. Super. Ct. 2000); *Fusco*, 2018 WL 3618232, at *4 ("[T]he plaintiff must show that the employee's prior bad acts would have put a reasonable employer on notice of the employee's propensity to injure others."). To make such a showing, a plaintiff must allege "a specific instance of past misconduct" on the part of the employee. *Fusco*, 2018 WL 3618232, at *5 ("[F]ederal courts routinely dismiss negligent hiring claims under Rule 12(b)(6) if the plaintiff fails to allege a specific instance of past misconduct.").

The second amended complaint still lacks factual allegations suggesting that Holloway had committed similar bad acts prior to joining Uber or that Defendants knew or should have known that Holloway had violent tendencies before enrolling him as a driver. The exhibits

---

complaint or in his amended complaints, however, the Court will not consider it. *See Williams v. Philadelphia Water Dep't*, No. CV 23-1728, 2023 WL 5044961, at *2 (E.D. Pa. Aug. 8, 2023) (declining to consider a claim "because it was alleged in a response to a motion to dismiss, rather than in an initial complaint or in an amended complaint"); *see also Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 385 (E.D. Pa. 2008) ("[A plaintiff] cannot raise a new claim in her brief that she has not already pleaded.").

[6] Plaintiff renews his allegations and arguments that Defendants are common carriers, so they owed Plaintiff the highest duty of care. (*See* Doc. No. 18 at 3, 10; Doc. No. 20 at 6–9); *see also Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966) ("A common carrier for hire, although not an insurer, owes to its passengers the highest degree of care."). Because Plaintiff's claims are deficient regardless of whether Defendants are held to a higher duty of care, the Court need not reach this issue.

attached to Plaintiff's updated complaint allege that Holloway had committed traffic violations (Doc. No. 18-1), satisfied traffic court judgments (Doc. No. 18-2), and may have been involved in two lawsuits based on motor vehicle accidents (Doc. No. 18-3). These acts would not have put Defendants "on notice of [Holloway's] propensity to injure others." *Fusco*, 2018 WL 3618232, at *4. The same is true for Plaintiff's conclusory allegations that Holloway had a history of violence or that Defendants knew or should have know that Holloway was homophobic, violent, and had a bad temper. *See id.* at *5 (dismissing negligent hiring claim where the complaint "only generally allege[d] that the driver was unqualified and dangerous"); *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plus, Plaintiff's allegations about Defendants' screening process continue to be insufficient because a "more thorough screening process would [not] have uncovered signs of violent behavior." *Fusco*, 2018 WL 3618232, at *4. Thus, Plaintiff has not stated a claim for negligent hiring.[7] *See G.B. v. Jade Nails Hair Spa*, No. 5:19-CV-06093-JMG, 2021 WL 4149146, at *4 (E.D. Pa. Sept. 13, 2021) ("G.B.'s negligent hiring claim falls short because she has not established that Nhin committed any bad acts prior to his hiring at Jade Nails.").

Second, Plaintiff's negligent supervision claim fails for a similar reason. "To make out a claim for negligent supervision, the plaintiff must show that the employer knew or should have known of a need to supervise the employee, and that, by failing to do so, exposed the plaintiff to the employee's misbehavior." *Fusco*, 2018 WL 3618232, at *4; *see also R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 697 (Pa. Super. Ct. 2000). In cases such as this, "an

---

[7] Plaintiff again argues that the Court should infer that Holloway has engaged in similar acts based on how brutal and unprompted his attack of Plaintiff was. (Doc. No. 20 at 14.) But this inference is far too attenuated for the Court to reach.

employer may be negligent if he knew or should have known that his employee had a propensity for violence and such employment might create a situation where the violence would harm a third person." *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980). As with his negligent hiring claim, Plaintiff must point to some prior bad acts on the part of Holloway that "would have put a reasonable employer on notice of [his] propensity to injure others." *Fusco*, 2018 WL 3618232, at *4 (citing *Heller v. Patwil Homes*, 713 A.2d 105, 108 (Pa. Super. Ct. 1998)).

Here, Plaintiff's second amended complaint lacks specific factual allegations that Holloway had committed prior bad acts, which would have suggested that he had a propensity for violence and so Defendants knew or should have known of a need to supervise him. This deficiency is fatal to his negligent supervision claim.[8] *See, e.g.*, *Young v. Temple Univ. Campus Safety Servs.*, No. CV 15-2892, 2015 WL 6503386, at *4 (E.D. Pa. Oct. 28, 2015) (dismissing negligent supervision claim where the complaint failed to "allege any facts that would establish that Temple University knew or should have known that Officer Jones had a propensity to engage in conduct for which [it] could be held liable" (internal quotations omitted)); *Scruggs v. Whiting-Turner Contracting Co.*, No. 17-CV-3202, 2018 WL 3831408, at *4 (E.D. Pa. Aug. 10, 2018) (dismissing negligent supervision claim because there was "no allegation that [the

---

[8] The Court also notes that Plaintiff's claim for negligent supervision, which requires that an agent be acting *outside* of the scope of their employment, is inconsistent with his repeated allegations that Holloway was acting *within* the scope of his employment when he assaulted Plaintiff. (*See, e.g.*, Doc. No. 18 at ¶¶ 3, 9, 33, 37, 47, 52, 55, 61, 64, 67); *see Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013) ("To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting *outside the scope of his employment*, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." (emphasis added)); *Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 549 (E.D. Pa. 2023) (dismissing negligent supervision claim where it was alleged that the employees were acting within the scope of their employment).

employee] had committed prior bad acts and that [the defendant] knew or should have known of those acts").

Last, the Court finds that Plaintiff has not stated a claim for negligent training. "Pennsylvania courts have not outlined a specific framework for analyzing a negligent training claim, separate from the general negligence framework of duty, breach, causation, damages." *Burns v. SeaWorld Parks & Ent., Inc.*, 675 F. Supp. 3d 532, 547 (E.D. Pa. 2023) (internal quotation marks omitted). A negligent training claim is thus best understood to require a plaintiff to show that the defendant: (1) had a duty to train its employees on the particular topic at issue; (2) breached that duty; and (3) the breach of that duty caused the plaintiff's harm. *Oldham v. Pa. State Univ.*, No. 4:20-CV-02364, 2022 WL 1528305, at *24 (M.D. Pa. May 13, 2022).

In support of his negligent training claim, Plaintiff makes numerous conclusory allegations about why Defendants were negligent in their training of Holloway. (Doc. No. 18 at 10–15.) Specifically, he alleges that Defendants were negligent for failing to: (a) "train drivers regarding appropriate interactions with customers and not using abusive language or escalating situations;" (b) "train employees in the best way to resolve conflicts without resulting to punching, and threatening people;" and (c) "train the driver to disengage after a customer cancels a ride rather than approach said customer following the cancelation." (*Id.* at 14–15.)

None of these allegations persuade. For one, Plaintiff still has not alleged facts from which the Court can find that Uber had a duty to train Holloway on something as elementary as not assaulting passengers. *See Doe A.F. v. Lyft, Inc.*, No. CV 23-3990-KSM, 2024 WL 3497886, at *3 (E.D. Pa. July 19, 2024) ("[A]s to the negligent training claim, Plaintiff has not alleged facts suggesting that Lyft had a duty to train Brown on something as elementary as not sexually

assaulting passengers[.]"). For another, Plaintiff again does not allege what training Defendants do provide and why that training is insufficient. *See Oldham*, 2022 WL 1528305, at *25 ("Oldham provides no information on what trainings occurred, who did (or did not) receive them, and why they were purportedly deficient. Absent some specific facts showing how Penn State, Harris, and Glon breached their duty to properly train their employees and/or staff, Oldham cannot sustain a claim for negligent training.") So, Plaintiff has failed to state a claim for negligent training.

* * *

In sum, the Court identified issues in Plaintiff's complaint and gave him a chance to fix them. But Plaintiff has not done so. His second amended complaint still lacks allegations of prior bad acts that would show Holloway's propensity for violence. It also lacks any factual allegations suggesting that Defendants had a duty to train their employees not to assault passengers. Thus, Plaintiff's negligent hiring, supervision, and training claims all fail.[9] And because Plaintiff did not cure the deficiencies previously identified by the Court, the Court will dismiss these claims with prejudice. *See Boyd v. Tempay*, No. CIV.A. 07-377-JJF, 2008 WL 5156307, at *5 (D. Del. Dec. 4, 2008) (dismissing claim with prejudice when Plaintiff "was given an opportunity to correct his pleading deficiencies, to no avail").

---

[9] In Plaintiff's response to Defendants' motion to dismiss, he asks the Court to look past the shortcomings in his pleadings because he has not had the benefit of discovery. (Doc. No. 20 at 12, 14, 16, 20). But the Court cannot overlook these key deficiencies based on his unsupported belief that discovery *may* reveal the facts necessary for him to state a plausible cause of action. *See Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (rejecting plaintiffs' argument that "because discovery may reveal [the defendants] engaged in 'fraud or concealment' dismissal of the complaint was premature" and noting that "were we to reverse the dismissal here to allow for discovery, we would be permitting appellants to conduct a fishing expedition in order to find a cause of action. We cannot do so.").

## III.     Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted. Plaintiff's claims for negligent hiring, training, and supervision against Defendants are dismissed with prejudice. An appropriate Order follows.